UNITED STATES of America, Plaintiff-Appellee,

v.

Thomas CLAYTON, Defendant-Appellant.

No. 80–7638

Summary Calendar.

United States Court of Appeals, Fifth Circuit. Unit B

April 27, 1981.

Martin C. Puetz, Asst. Federal Public Defender, Augusta, Ga., for defendant-appellant.

Melissa S. Mundell, David Roberson, Asst. U. S. Attys., Savannah, Ga., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Thomas Clayton appeals from his conviction, after trial by jury, for armed bank robbery.[1] He urges two grounds of error. First, he contends that the trial court abused its discretion by admitting into evidence, allegedly without proper authentication, a Government's exhibit which was a composite of five photographs from the bank surveillance film and five photographs of a model wearing the clothes that Clayton was wearing when arrested. Second, Clayton argues that the trial court's jury instruction on reasonable doubt constitutes

---

1. 18 U.S.C.A. §§ 2, 2113(a), (d).

plain error. We find no merit in these contentions and accordingly affirm.

On April 15, 1980, at approximately 1:50 p. m., the Oglethorpe Street Branch of the Trust Company Bank in Savannah, Georgia, was robbed by a lone gunman. Upon entering the bank the robber pulled a brown stocking over his face and proceeded to a teller window where the teller, in response to the robber's demand, placed money, including bait or marked money, and a dye bomb into a paper bag. That teller activated her alarm and tripped the surveillance camera mechanism. The robber then demanded money from a second teller who also placed money from her drawer as well as bait money and a dye bomb into the paper bag. The gunman was observed by the branch manager and his secretary, and the manager activated the bank's security system, including its camera. Immediately after the robber departed, one of the tellers called the police and described the robber.

At approximately 1:53 p. m., ten blocks from the Oglethorpe Branch, Clayton was running when he was observed by a police officer who then arrested him. Clayton was carrying a sweater matching the description of the one worn by the robber. At the time of his arrest Clayton was carrying $1,188.00,[2] some $250.00 of which matched the serial numbers of the bait money.

The film was removed from the bank camera by a technician who gave it to an FBI agent. Government exhibit 14, which is at issue in this case, was prepared by FBI agent Peter Smerick, who testified as an expert witness in the science of forensic photography. Exhibit 14 consisted of five photographs prepared from the bank surveillance film and five black and white photographs of a model wearing the clothing that Clayton was wearing when he was arrested. Smerick made a comparison of the clothing taken from Clayton and that worn by the robber as shown in the bank film, and concluded that the shoes and jeans were identical, and that the belt and the sweater were similar, to those worn by the gunman in the film. Smerick used exhibit 14 to demonstrate to the jury the similarities he found and to illustrate how his opinion was formulated. Although exhibit 14 contained pictures of a model wearing the clothing, Smerick's opinion was based upon a comparison of the clothing itself with the film of the robber rather than upon a comparison of the clothed model with the bank surveillance film.

When the Government attempted to introduce exhibit 14 into evidence, defense counsel objected that Smerick had not, of his own knowledge, testified that the five photographs made from the bank surveillance film were accurate representations of the bank robbery scene. Nor did any of the bank employees who were present during the robbery testify that those five photographs were accurate representations of the bank. However, other photographs which were made from the two rolls of bank surveillance film, and which were introduced into evidence as exhibits 15, 16 and 17, were identified by the four bank employees who observed the robbery as accurate depictions of the scene at the bank on April 15, 1980.

■ This Court held in *United States v. Taylor*, 530 F.2d 639, 641–42 (5th Cir.), *cert. denied*, 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976), that photographs made from bank camera films were sufficiently authenticated by Government witnesses who were not present at the robbery when the testimony adduced stated the manner in which the films were used in the camera, how the camera was activated, that the film was removed immediately after the robbery, and the chain of possession of the film and the development of the prints. Clayton concedes that each of the elements of authentication listed in *Taylor* was established by the Government in this case. However, he seeks to distinguish *Taylor* on the ground that in *Taylor* eye witness authentication was impossible because all such witnesses were locked in a vault when the bank cameras were activated and during the robbery, whereas in this case witnesses were available but not used by the Govern-

---

**2.** The amount taken in the robbery was $2,079.00.

ment. We do not agree with Clayton that *Taylor* requires in all cases authentication by eye witnesses. Fairly read, *Taylor* requires only that this type of photographic evidence be authenticated by foundation evidence sufficient to show the circumstances under which the film was activated and made, the chain of custody of the film, and the reliability of the process by which the photographs were made from the film.

Although authentication by eye witnesses is certainly preferable, we do not conclude under the circumstances of this case that the photographs lacked proper authentication. A proper chain of custody for the film was established. Smerick testified that the five prints used in exhibit 14 were made from the same surveillance film as those photographs admitted as exhibits 15, 16 and 17 which were identified by all the bank employees present at the robbery as accurate depictions of the scene. We are not persuaded by Clayton's argument that each and every frame of a roll of film must be authenticated by accurate depiction testimony where several frames have been so authenticated by eye witnesses and the chain of custody of the film has been established. The standard of Fed.R.Evid. 901(a), which requires that evidence be authenticated by evidence "sufficient to support a finding that the matter in question is what its proponent claims," has been satisfied by proper foundation evidence in this case.

This Court has held that "[a]dmission of this type of photographic evidence is a matter largely within the discretion of the court, *Moore v. Louisville & Nashville R.R. Co.*, 223 F.2d 214, 216 (5th Cir. 1955)." *United States v. Taylor, supra*, 530 F.2d at 642. The district court did not abuse its discretion here.

■■■ Clayton's contention that the five photographs of the model wearing his clothes were not properly authenticated is also without merit. He argues that Smerick was not capable of authenticating these photographs because Smerick did not take the photographs himself and because he could not positively testify as to the distance between the photographer and the

model nor as to the lighting used. These failures go only to the evidentiary weight of exhibit 14 rather than to its admissibility. Smerick testified as to the manner of preparation of the photographs made of the clothed model and also testified that the photographs were taken by a photographer working for him. Smerick's testimony was sufficient to authenticate the photographs of the clothed model. A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it. *Kleveland v. United States*, 345 F.2d 134, 137 (2d Cir. 1965), *citing* McCormick, Evidence § 181, at 387 (1954).

■■ As noted above, Smerick used the pictures of the model wearing Clayton's clothes in order to demonstrate to the jury his method of comparison. The trial court overruled Clayton's objection to introduction of the photographs of the clothed model but did instruct the jury that the photographs were only of a model and that they were not taken in the bank. The court's instruction to the jury precluded improper use of these photographs by the jury.

The trial court did not abuse its discretion in admitting exhibit 14.

■■ Clayton's contention that the trial court's instructions as to reasonable doubt constituted plain error is without merit. The trial court instructed the jury that

> Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

Because Clayton's attorney did not object at trial to this charge, plain error must be demonstrated. Fed.R.Crim.P 52(b).

In *United States v. Baptiste*, 608 F.2d 666 (5th Cir. 1979), the trial court instructed the jury that

> Proof beyond a reasonable doubt is the kind of proof that you would be willing to rely and act upon in the management of your own personal affairs.

Even though this Court noted that such an instruction is erroneous, the Court held that the charge, taken as a whole, adequately conveyed the correct meaning of reasonable doubt and that there was no plain error. *Id.* at 668. The Court in *Baptiste* did, however, state that "[f]urther use of this instruction, however supplemented unnecessarily invites reversal." *Id.* The instruction in this case is distinguishable from that given in *Baptiste.* Here, the charge adds the phrase "*without hesitation*" and adds the qualification of "the *most important of your own affairs.*" This Court has held, in considering a charge that included language explaining reasonable doubt as evidence "such 'as you would be *willing to rely and act upon* in the most important of your affairs,'" that "reasonable doubt is better explained as the kind of doubt that would make a reasonable person *hesitate to act. United States v. Richardson,* 504 F.2d 357 (5th Cir. 1974)." *United States v. Patman,* 557 F.2d 1181, 1182 (5th Cir. 1977), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979).

The court's charge taken as a whole demonstrates no plain error.

AFFIRMED.